SECOND JUDICIAL DISTRICT, COUNTY OF BERGEN.

HARRY J. DALY, PLAINTIFF, v. MARGARET SCHENK AND WALTER W. WHITE, DEFENDANTS.

KIPP, J.   The plaintiff, Harry J. Daly, is the owner of premises known as No. 949 Edgewood avenue, Pelham Manor, Westchester county, New York, the uncontroverted value of which premises is $37,000, constituted as follows: $12,000 for the plot and $25,000 for the dwelling house thereon. The defendant Margaret Schenk is the lessee by assignment, and the defendant Walter W. White guarantor of the lease for consideration.   The lease, originally made between a former owner and a former lessee and properly assigned to the present parties in interest, provides for the payment of a monthly rental of $225 for the above designated premises, for a term of three years beginning October 1st, 1928.

On March 17th, 1930, a fire of undetermined origin occurred on the premises, through no fault of the defendants. The defendant Margaret Schenk, the occupant, vacated and quit the premises immediately thereafter, with prompt notice of the occurrence of the fire being given to the agent of the plaintiff, contending that the premises had become untenantable, a fact which the plaintiff does not controvert.   In this case the damage to the house by fire was of such a character

as to render the house wholly untenantable from March 17th, 1930, until May 1st, 1930. The fire burned a large hole in the floor between the dining room and living room, necessitating, among other things, the replacing of a girder in the cellar and the replacing of thirty beams, and the replastering of the living room and dining room to a large extent. There was also the usual damage by smoke to many of the rooms upstairs, as well as on the first floor. The cost of the replacements and repairs was $2,079.16, and took at least a month to complete. Immediately after the fire, Mrs. Margaret Schenk, one of the defendants, removed all of her furniture and belongings from the premises and has never returned. It was admitted that Mrs. Schenk has surrendered the premises.

Counsel have agreed that the rights and liabilities of the parties are dependent upon the fifth clause of the lease, which reads as follows:

"*Fifth.* That if the said premises or any part thereof shall, during said term or previous thereto, be slightly· damaged by fire, the premises shall be promptly repaired by the landlord and an abatement will be made for the rent corresponding with. the time during which and the extent to which said premises may have been untenantable, but if the building or buildings should be so damaged that the landlord shall decide to rebuild, the term of this lease shall cease and the aggregate rent be paid up.to the time of the fire."

A perusal of this clause makes it quite evident that the contingency which occurred in this case is not specifically covered thereby. The first contingency provides for a *slight* damage. The plain meaning of words used in their ordinary sense cannot be arbitrarily ignored, and it would therefore appear that, in view of the testimony as to the extent of the damage, that the ravages of the fire in the instant case can hardly be termed "slight damage."

The second contingency provides for a situation wherein the building shall be totally, or substantially, destroyed, in which event the lease is to terminate. Such is not the case here.

The fifth clause covers two extremes without pointing out the middle ground. In the instant case, the damage was more than slight, but did not amount to such a destruction as to require "rebuilding," as that term is ordinarily used and understood. A proper description of the condition consequent upon the fire would be to say that the premises were rendered untenantable and unfit for occupancy.

In such a circumstance, it is conceded by counsel that the statutes of New York control. Laws of 1909, chapter 52, section 227 of the Real Property law of New York provides as follows:

"Where any building, which is leased or occupied, is destroyed or so injured by the elements, or any other cause as to be untenantable, and unfit for occupancy, *and no express agreement to the contrary has been made in writing,* the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit and surrender possession of the leasehold premises, and of the land so leased and occupied; and he is not liable to pay to the lessor or owner rent for the time subsequent to the surrender."

It cannot be said that the provisions of the fifth clause of the lease amount to a waiver of the statute, since the clause in question does not, in terms, cover the instant situation. In the case of *New York Real Estate and Building Co.* v. *Motley,* 143 *N. Y.* 156; 38 *N. E. Rep.* 103, Mr. Justice Finch states:

"The question was whether the emergency contemplated by the act of 1860 (chapter 345), which is an injury by fire making the premises untenantable, was covered and provided for by the terms of the lease between the parties, and for that reason taken out of the scope and operation of the statute. The lease does provide expressly for two contingencies. One of them is such a destruction of the building as requires it to be rebuilt, in which event all rent ceases, and the lease terminates. The other is an injury by fire which admits of a partial occupancy, in which event the accruing rent is to be measured by the proportion of available occupancy. But what occurred was something different

from either described contingency. The fire did not compel a rebuilding on the one hand, nor did it leave a partial occupancy which would carry some part of the rent with it, but the premises demised became wholly untenantable."

He continues: "If so onerous a burden had been in terms proposed, it is quite probable that the lease would have been refused." Assuming that the act of 1860 (chapter 345) is substantially the same as section 227, chapter 52, of the laws of 1909, the reasoning in that case applies with equal force here. The same question is presented. The defendant was entitled, under the statute, to quit and surrender the premises, and thus avoid further liability to pay rent.

The defendant White guaranteed the payment of the rent. It is agreed that his liability is contingent upon that of defendant Schenk.

Judgment will be entered for the defendant and against the plaintiff upon the main case, and judgment for the defendant in the sum of $101.50, upon the first count of the counter-claim, and in the sum of $225 upon the second count of the counter-claim.